Rebecca BORNSTEIN and Jerry Lewis,
Appellants–Plaintiffs,

v.

WATSON'S OF INDIANAPOLIS,
INC., Appellee–Defendant.

No. 49A05–0110–CV–468.

Court of Appeals of Indiana.

July 3, 2002.

Lance Wittry, Cheryl Planck, Indianapolis, IN, Attorneys for Appellants.

Linda Turner Jelks, Skiles Hansen Cook & Detrude, Indianapolis, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Rebecca Bornstein and Jerry Lewis (collectively, the Plaintiffs) appeal the trial court's order granting summary judgment in their wrongful death action against Watson's of Indianapolis, Inc. (Watson's). Specifically, the Plaintiffs argue that the trial court erred in concluding that their claim was barred by collateral estoppel. Because we find that the issues of liability and damages in this wrongful death lawsuit have already been fully and fairly litigated in a previous lawsuit, we affirm.

### Facts and Procedural History

On August 18, 1997, four-year-old Derek Lewis drowned in a residential swimming pool owned by Mark Pauley and located on his property. Derek was the child of Rebecca Bornstein and Jerry Lewis. On the day of the drowning, Bornstein's mother, Claudia McHenry, was caring for Derek.

On November 25, 1997, the Plaintiffs filed a wrongful death action against Pauley in Shelby County (the Shelby County lawsuit) alleging that Pauley was negligent for failing to restrict access to his residential swimming pool. On January 13, 1998, Pauley filed his Defendant's Answer in which he denied the Plaintiffs' allegations and named McHenry as a culpable nonparty. The Shelby County lawsuit progressed with no other nonparties named or defendants joined in the action. On July 13, 1999, Pauley added James McCann, a safety engineer, to his witness list. During a deposition held on August 11, 1999, McCann testified that he believed that Pauley's swimming pool supplier, Watson's, and Pauley's pool deck builder, Dean Stahley, failed to appropriately enclose the pool or to warn Pauley that an enclosure was needed when the pool was installed in 1994. Shortly before trial, upon the Plaintiffs' Motions in Limine, the trial court in the Shelby County lawsuit excluded all evidence or testimony suggesting that Watson's or Stahley "had a duty and breached that duty, and/or in some manner is responsible, in whole or in part, for Derek Lewis' death." Appellant's App. p. 118.

On August 26, 1999, the jury in the Shelby County lawsuit rendered its verdict, apportioning fault and determining damages for Derek's death. On the issue

of liability, the Shelby County jury found that:

| | |
|---|---|
| Percentage of fault attributable to defendant, Mark Pauley | 60% |
| Percentage of fault attributable to plaintiff, Rebecca (McHenry) Bornstein | 25% |
| Percentage of fault attributable to plaintiff, Jerry Lewis | 5% |
| Percentage of fault attributable to non-party, Claudia McHenry | 10% |
| | = 100% |

Appellant's App. p. 59. The Shelby County jury determined the total amount of damages that the Plaintiffs were entitled to recover without regard to fault to be $265,000. After reducing the damages by 40% for comparative and nonparty fault, the jury returned a verdict of $159,000. Appellant's App. p. 58.

Meanwhile, on August 17, 1999, the Plaintiffs filed this wrongful death action against McHenry and Andy Prefontaine, d/b/a Watson's Pools, d/b/a Watson's in Marion County (Marion County lawsuit). The Plaintiffs alleged that Derek's death was the product of Watson's carelessness and negligence in failing to enclose the pool with a fence or pool cover or to warn Pauley that an enclosure was needed. On October 4, 1999, Watson's filed its Answer and Affirmative Defenses naming Derek Lewis as a culpable nonparty. On March 3, 2000, Plaintiffs filed their Motion to Amend Complaint in order to substitute Watson's for Prefontaine as defendant in this case; the trial court granted this motion and dismissed Prefontaine from the action. On April 12, 2001, the trial court accepted Watson's Amended Answer and Affirmative Defenses, which added Pauley as a nonparty. On April 18, 2002, Watson's filed its Motion for Summary Judgment and Designation of Evidence arguing that the Plaintiffs had already "litigated the issues of liability and damages" and should be estopped from relitigating those issues. Appellant's App. p. 45. After

holding oral arguments on July 27, 2001, the Marion County trial court granted Watson's summary judgment motion and dismissed the Marion County lawsuit. This appeal ensued.

**Discussion and Decision**

The Plaintiffs argue that the trial court erred in granting Watson's summary judgment motion. In particular, the Plaintiffs assert that their claim should not have been barred by collateral estoppel because Watson's liability in the death of their son has never been litigated.

Our summary judgment standard of review is well settled. Summary judgment should be granted only when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Therefore, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Ind. Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1069 (Ind.Ct.App.2001), *trans. denied.* The party appealing the denial of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Mendenhall v. City of Indianapolis*, 717 N.E.2d 1218, 1224 (Ind.Ct.App.1999), *trans. denied.* We will resolve any doubt as to fact or inference to be drawn from the evidence in favor of the party opposing the motion. *Shelly & Sands*, 756 N.E.2d at 1069.

The Plaintiffs argue that their claim against Watson's for the wrongful death of Derek should not be barred by collateral estoppel even though the jury in the Shelby County lawsuit already deter-

mined the amount of damages for Derek's death and allocated 100% of the fault for the death. The concept of collateral estoppel serves to "promote[ ] judicial economy; in particular, it reduces the amount of court time devoted to retrying previously litigated issues." *Tofany v. NBS Imaging Sys., Inc.,* 616 N.E.2d 1034, 1039 (Ind. 1993). "[C]ollateral estoppel operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit." *Sullivan v. Am. Cas. Co.,* 605 N.E.2d 134, 137 (Ind.1992). In that situation, the first adjudication will be held conclusive even if the second action is on a different claim. *Id.* In determining whether to allow the use of collateral estoppel, "the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Id.* at 138. In this case, we find that the issues of liability and damages for Derek's death have already been fully litigated and the prime considerations for allowing collateral estoppel have been met.

 The Plaintiffs' wrongful death claim in the Shelby County lawsuit was subject to the Comparative Fault Act. Ind.Code § 34–51–2–1. "Under the Comparative Fault Act, liability is to be apportioned among persons whose fault caused or contributed to causing the loss in proportion to their percentages of 'fault' as found by the jury." *Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 109 (Ind.2002) (citing Ind.Code § 34–51–2–8; *Cahoon v. Cummings,* 734 N.E.2d 535, 541 (Ind. 2000)). Under the Act, the jury apportions the total fault for an injury among the plaintiff(s), defendant(s), and any other person who is properly named a "nonparty." Ind.Code §§ 34–51–2–7 to –8. The jury also determines the total amount of damages the claimant would be entitled to regardless of fault and then multiplies the percentage of fault by the total amount of damages in order to determine the amount of damages for which each defendant is liable. *Id.*

The Plaintiffs allege in the Marion County lawsuit that Watson's is responsible for the same damages stemming from the death of their son as were claimed in the Shelby County lawsuit. However, the jury in the Shelby County lawsuit already apportioned 100% of the fault for Derek's death and determined that the total amount of damages to be $265,000. The jury apportioned 5% of the fault to Jerry Lewis, 25% of the fault to Rebecca Bornstein, 60% of the fault to Pauley, and 10% of the fault to McHenry as a nonparty. Based on the Shelby County jury's verdict, there is no fault left that could be assigned to Watson's. With liability fully apportioned and total damages determined for Derek's death in the Shelby County lawsuit, the Marion County lawsuit only provides an opportunity to relitigate these same issues, and it is not proper for these issues to be relitigated.

The Plaintiffs were able to fully litigate their wrongful death claim in Shelby County, and, in fact, they received a successful verdict. The Plaintiffs had the opportunity to depose witnesses and the ability—if they so desired—to add other defendants to the Shelby County lawsuit. The Plaintiffs were afforded their opportunity to present their case to a jury concerning fault and the amount of their damages. Therefore, we find that the Plaintiffs had a full and fair opportunity in the Shelby County lawsuit to litigate their wrongful death claim and the issues of fault and damages necessarily included in that claim.

We also find that under the circumstances it was not otherwise unfair to permit the use of collateral estoppel in this case. Watson's alleged liability was not hidden from the Plaintiffs through fraud or some other type of concealment. The Plaintiffs identified the owner of the pool in which the accident occurred, and routine discovery should have led to the identity of the pool supplier. Moreover, during McCann's deposition, the Plaintiffs learned that there was a possibility that Watson's and Dean Stahley failed to appropriately enclose the pool or to warn Pauley that an enclosure was needed. Even if the Plaintiffs did not have the necessary information at the beginning of the Shelby County lawsuit to name Watson's as a defendant, the Plaintiffs could have moved to continue the trial and amend their complaint to include Watson's as a defendant after taking McCann's deposition.

Furthermore, allowing the Plaintiffs to continue to pursue a wrongful death action after liability and damages have already been decided in another case would thwart judicial economy and finality. The Plaintiffs chose to proceed with only one defendant in the Shelby County lawsuit, and based on that decision the Shelby County jury fully apportioned fault to the plaintiffs, defendant, and nonparty that were before it. By failing to include all possible joint tortfeasors in the action, the Plaintiffs limited to whom the jury could apportion liability. Our supreme court discussed a similar issue in *Mendenhall v. Skinner & Broadbent Co.*, 728 N.E.2d 140 (Ind.2000), which involved a defendant failing to name a nonparty. In *Mendenhall,* our supreme court found that a defendant could not get a credit for money paid by a settling co-defendant who had not been added back into the case under the nonparty provisions of the comparative Fault Act. In refusing to grant a credit for money already received by the plaintiff, our supreme court reasoned, "When the nonparty is not added by the defendant, the jury cannot provide an allocation of fault to that party and any effort by the court to calculate a credit is more speculative." *Id.* at 144. Similarly, if a joint tortfeasor is not added by the plaintiff as a defendant, the jury cannot provide an allocation of fault to that party when it renders its verdict, and pursuing a subsequent action against the alleged joint tortfeasor could lead to a result inconsistent with the original judgment.

When there are possible joint tortfeasors, a plaintiff is obliged to name all alleged joint tortfeasors as defendants in one suit or face the possibility of being estopped from pursuing a remedy against the unnamed tortfeasor in a subsequent lawsuit. By continuing to proceed with their Marion County lawsuit, the Plaintiffs are negating the Shelby County jury's decision and bringing about the possibility of inconsistent judgments. Thus, it is not only fair that the Plaintiffs' Marion County lawsuit be barred by collateral estoppel; it is necessary to bar the claim by collateral estoppel in order to preserve the import of the Shelby County verdict. Therefore, we conclude that the trial court was correct in granting summary judgment because the issues of liability and damages have already been fully litigated in a previous lawsuit and the prime considerations for allowing collateral estoppel to bar relitigation of these issues in this case have been met.

Judgment affirmed.

RILEY, J., and MATTINGLY–MAY, J., concur.